IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUIGI CIOCCA, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | NO. 04-5605 |
| BJ.'S WHOLESALE CLUB, INC., | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                                      **AUGUST 12, 2011**

Presently before the Court is a "Motion in Limine to Preclude the Trial Testimony of Plaintiff's Putative Expert, Craig D. Clauser, P.E." submitted by Defendant, BJ's Wholesale Club, Inc. ("Defendant"). For the following reasons we will deny Defendant's Motion.

**I.     FACTS**

Plaintiff, Luigi Ciocca ("Plaintiff") commenced this action by filing a Complaint in this Court on December 2, 2004, seeking damages for injuries caused by an allegedly defective snow blower purchased by Plaintiff's parents at Defendant's store. (Compl. ¶ 13.) According to Plaintiff, his parents bought the snow blower on or about January 17, 2000 and neither he nor his parents altered it in any way since the date of purchase. (Id. ¶ 14.) On December 5, 2002, Plaintiff decided to use the snow blower to remove snow from the driveway of his residence. (Pl.'s Dep. at 27:11-13.) He started the snow blower in the shed where his parents kept it (Id. at 29:6-10), and used it successfully to remove snow from the driveway until he reached about one quarter of the way down the length of the driveway, which Plaintiff estimates is about twenty feet long (Id. at 28:17-18). At this point, the discharge chute of the snow blower became clogged.

(Id. at 35:9.) After releasing the levers for the auger and the traction drive located on the handles of the snow blower, Plaintiff walked away to retrieve an approximately one and one-half foot long stick that he planned to use to unclog the chute. (Id. at 35:12-36:6, 75:4-14.) It was Plaintiff's belief that releasing the levers stopped the blades inside the machine. (Id. at 75:10-21.) Plaintiff left the snow blower running during the ten minutes he left to retrieve the stick, despite the fact that he had seen placards on the snow blower that cautioned against leaving the snow blower running when unattended. (Id. at 79:22-80:13.) When Plaintiff returned with the stick, he used it to push the snow back into the discharge chute. (Id. at 37:23-38:7.) As he was unclogging the discharge chute with the stick, he felt the machine tugging the stick and his hand into the chute. (Id. at 38:17-39:8.) Plaintiff's father was outside with Plaintiff when this incident occurred. (Id. at 33:17-34:4.) Immediately after the accident, Plaintiff approached his father, who then brought him into the house. (Id. at 39:15-24.) Upon entering the house, Plaintiff took of his work gloves and realized that his hand had been cut. (Id. at 39:11-17.) Plaintiff then fainted and was taken to Frankford hospital.

      As a result of the accident, one of Plaintiff's fingers had to be amputated and another finger was severely cut. (Id. at 71:17-72:2.) Specifically, Plaintiff's injuries consisted of a comminuted fracture of the middle phalanx of his left index finger with an amputation distal to the fracture. (Pl.'s Resp. to Interrog. No. 3.) He also sustained a transverse fracture of the middle phalanx of the left middle finger with comminuted fragments. (Id.) On December 9, 2002, he underwent surgical revision of the amputation with flap closure, and surgical repair of the laceration and fracture of the middle finger. (Id.) Plaintiff is now permanently disfigured. (Id.)

Plaintiff testified at his deposition that he was aware that "getting [his] hand or putting [his] hand into the discharge shoot may cause injury if the blades were still moving." (Id. at 61:22-62:2.) Plaintiff further testified that he had previous experience with snow blowers and lawnmowers and that he was "aware of the possibility that if the blade was still moving and [he] stuck a stick or something in there that the stick would get pulled in." (Id. at 64:8-13.) However, when asked whether Plaintiff was "aware that if [he] were still holding that stick [he] might get pulled in [or that his] hand could go with it," he responded that he did not remember. (Id. at 64:14-17.)

Plaintiff filed a Complaint in this Court on December 2, 2004 against Defendant and Murray, Inc. ("Murray") (collectively, "Defendants"), alleging: (1) strict liability against Defendants under § 402A of the Restatement (Second) of Torts; (2) negligence against Murray for failing to properly design, manufacture, assemble, inspect, and test the snow blower; (3) negligence against Defendant for failing to properly assemble, test, and inspect the snow blower; (4) breach of implied warranty against Murray; and (5) breach of express warranty against Murray. On January 10, 2005, we received a Suggestion of Bankruptcy indicating that Murray had filed for Chapter 11 and that all civil actions against it were to be stayed, including the present action. On February 15, 2005, Defendant filed its Answer with Affirmative Defenses and Crossclaim against Murray, alleging that Murray would be solely or at least jointly and severally liable and would be liable over to Defendant for contribution and indemnity in the event that we found in favor of Plaintiff. On January 23, 2006, we placed this case in the civil suspense file due to Murray's Chapter 11 proceedings. On October 29, 2010, Defendant filed a Motion to transfer this case from the civil suspense file to the active docket, indicating that Murray had

dissolved and that Plaintiff wished to pursue him claims against Defendant. On November 1, 2010, we granted Plaintiff's Motion and transferred this case back to the active docket.

The present dispute centers around an untimely expert report compiled by Mr. Craig D. Clauser, P.E. ("Clauser"), submitted by Plaintiff. On December 17, 2010, we issued a Scheduling Order requiring Plaintiff to submit his expert reports to Defendant by June 20, 2011. We expressly ordered that any proposed changes to the Scheduling Order would be considered by written motion only. On June 7, 2011, Defendant filed a Motion for Summary Judgment arguing that Plaintiff could not prove their case without expert testimony, Plaintiff had assumed the risk of his injuries, and Plaintiff could not produce any evidence of negligence on the part of Defendant. On June 16, 2011, Plaintiff emailed Defendant Clauser's expert report ("Clauser Report") without this Court's authorization and without any explanation for its untimeliness. On June 21, 2011, Defendant filed a Motion in Limine to preclude the Clauser Report arguing that allowing Plaintiff's untimely submission would cause it prejudice, would unreasonably delay the proceedings, and was otherwise unauthorized in the first instance.

## II.   DISCUSSION

Federal Rule of Civil Procedure 26(a)(2)(C) establishes the timing of the required disclosures of the identity of experts and their expert reports, providing that:

> (C) Time to Disclose Expert Testimony. *A party must make these disclosures at the times and in the sequence that the court orders.* Absent a stipulation or a court order, the disclosures must be made:
>
> > (i) at least 90 days before the date set for trial or for the case to be ready for trial; or
>
> > (ii) if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B),

within 30 days after the other party's disclosure.

Fed. R. Civ. P. 26(a)(2)(C) (emphasis added). Rule 37(c)(1) provides, in pertinent part, that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) . . . the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Along with the importance of the excluded testimony (Quinn v. Consol. Freightways Corp. of DE, 282 F.3d 572, 577 (3d Cir. 2002)), this Court must also consider:

> "(1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases open in court; and (4) bad faith or wilfulness in failing to comply with a court order or discovery obligation."

Haines v. Davies, Nos. 07-00851, 07-00852, 2009 WL 331433, at *3 (M.D. Pa. Feb. 9, 2009) (quoting Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 148 (3d Cir. 2000)).

Defendant now moves to exclude the Clauser Report arguing that it was untimely, Plaintiff has no substantial justification for its untimeliness, the untimeliness unfairly prejudiced Defendant, and allowing the report would disrupt the orderly and efficient disposition of this case. (Def.'s Mot. in Limine at 5-6.) Plaintiff counters that the exclusion of untimely evidence is an extreme sanction that is not normally imposed, the importance of Clauser's testimony is great, the delay in production of Clauser's report caused only minimal prejudice to Defendant, Defendant had ample opportunity to cure any prejudice it suffered, and Plaintiff did not produce Clauser's report in bad faith.

In this case, we issued a Scheduling Order on December 17, 2010 requiring Plaintiff to forward his expert report to Defendant on or before May 18, 2011 and that proposed changes to

the Scheduling Order were to be considered by written motion only. Plaintiff served Clauser's expert report on Defendant via email on June 16, 2011, twenty-nine days after the deadline. Plaintiff's June 16, 2011 disclosure of expert testimony, therefore, failed to comply with this Court's Order as it was untimely and done without our permission. Thus, we will only allow Plaintiff to use Clauser's Report or Clauser himself to supply evidence at trial if Plaintiff's untimeliness was substantially justified or was harmless. Fed. R. Civ. P. 37(c)(1). For the following reasons, we find that Plaintiff's failure to timely submit the expert report was not substantially justified but that any resulting prejudice is minimal and curable.

First, we note that the importance of the testimony sought to be excluded is great. In Clauser's Report, he concludes that:

> [Plaintiff] was injured when his left hand was drawn into the discharge chute of the snow blower he was operating. This incident occurred because the impeller was turning under power when [Plaintiff] attempted to clear the discharge chute. The impeller was able to turn with the auger control level released (in the OFF position) because the snow blower was negligently assembled and sold to the Ciocca's in a defective condition by BJ's Wholesale Club; the control linkage was improperly adjusted. This defective condition was improperly adjusted.

(Def.'s Mot. in Limine, Ex. 2, Clauser Rpt. at 4.) This is Plaintiff's only evidence of a product defect and causation and we agree with Plaintiff that it would also greatly assist a jury in comprehending the nature of the defect.

Next, we find that Defendant cannot claim that it was surprised by Clauser's report given the technical nature of the alleged deficiencies in Plaintiff's Complaint and Plaintiff's discovery responses. For instance, in Plaintiff's Complaint, he alleges:

> 28. Plaintiff's injuries were caused by the negligence and carelessness of defendant BJ's Wholesale Club, Inc. in the following particular respects:

      a.      failure to properly assemble the snowthrower[1] with an impeller/blade that stopped when the clutch lever was released;

      b.      failure to properly assemble the snowthrower with a brake that stopped the impeller/blade when the clutch lever was released.

(Compl. ¶ 28.) In addition, Plaintiff's response to Defendant's interrogatory no. 28 states: ". . . when [Defendant] sold the subject snowthrower, it lacked one or more elements necessary to make it safe for its intended use, including a brake that stopped the impeller/blade when the clutch lever was released . . ." (Pl.'s Resp., Ex. A, Resp. to Interrog. No. 21.) Throughout Plaintiff's responses to Defendant's interrogatories, Plaintiff mentions that he will employ the services of an expert to identify the exact nature of the snow blower's defect and that the Defendant could inspect the snow blower upon request. (Id. at Nos. 8-11, 18, 21.) Thus, Plaintiffs have made it clear from the outset of the litigation that their theory of the case was one grounded in negligent assembly by Defendant and would likely require an expert report. If there was confusion, Defense counsel could have simply sought clarification from Plaintiff's counsel.

     Next, we consider the degree of prejudice, if any, which Defendant would suffer if we allow Clauser's Report. Defendant claims that it will be prejudiced in two ways. (Def.'s Mot. in Limine at 6-7.) First, it claims that it will negatively affect its Motion for Summary Judgment which is currently pending and depends, in part, on Plaintiff's failure to produce an expert report. (Id. at 6.) Second, it claims that it could not obtain an expert to review the Clauser report, examine the snow blower, or issue a rebuttal report within the deadline we set in our December 17, 2010 Scheduling Order. (Id.) In likely anticipation of Plaintiff's argument that we are able to

---

[1] The terms "snow blower" and "snowthrower" are used interchangeably throughout the pleadings and papers. We have opted to adopt the term "snow blower" for our purposes.

cure any prejudice by re-opening discovery, Defendant further contends that expanding the time for discovery would disrupt the orderly and efficient trial of the case. (Id.) Plaintiff counters that Defendant has had "ample opportunity to cure the alleged prejudice" because the snow blower has remained available for inspection since Plaintiff submitted the Clauser report. (Pl.'s Resp. at 5.)

We are not persuaded that the mere availability of the snow blower for inspection by Defendant is enough to cure prejudice if the time for such inspection is after the deadline set by this Court. Pursuant to our Scheduling Order, Defendant had less than one week from receiving the Clauser report to produce a rebuttal report or to examine and challenge it effectively and the time for Defendant to submit an expert report of its own is well past. However, this prejudice is one that is within our power to cure by granting Defendant additional time within which to respond in full to the Clauser Report, depose Clauser, or obtain its own expert report. See Gregory v. Sewell, Nos. 04-2438, 04-2439, 04-2440, 2006 WL 5186521, at *4 (M.D. Pa. Aug. 23, 2006) (exercising same power in analogous circumstances). Plaintiff makes it clear that he would consent to the additional time for expert discovery as he indicated in his Response that he has "no objection to the production of a responsive report by Defendant prior to trial and Plaintiff is also willing to make his expert available for deposition if requested by Defendant." (Pl.'s Resp. at 5.) Furthermore, we will refrain from ruling on Defendant's pending Motion for Summary Judgment until Defendant has had an opportunity to conduct further expert discovery.

We further find that allowing Plaintiff to rely on the Clauser Report would not disrupt the orderly and efficient trial of the case or other open cases in court. Importantly, no trial date has

been set for this case and so Defendant cannot claim and, in fact, does not claim that it relied on an approaching trial date. In cases where the court excludes expert testimony on grounds of untimeliness, it is almost always in the face of a fast approaching trial date. See Vorhes v. Mittal Steel USA, Inc., No. 06-1130, 2009 WL 959579, at *3 (W.D. Pa. Apr. 6, 2009) (excluding expert testimony where plaintiff first disclosed possibility of calling expert by putative amendment to pretrial statement one month prior to trial date); Cf. Soufflas v. Zimmer, Inc., 474 F. Supp. 2d 737, 745 (E.D. Pa. 2007) (denying motion in limine based on failure to comply with pretrial order in part because case not yet listed for trial, defendant afforded ample time to procure expert in rebuttal, or have experts supplement their reports).

Lastly, after reviewing Plaintiff's Response, we find that he did not submit the Clauser report in bad faith. In Konstantopoulos v. Westvaco Corp., 112 F.3d 710, 720-21 (3d Cir. 1997), the Third Circuit addressed conduct that rises to the level of bad faith in the context of untimely expert disclosures. It held that, where a plaintiff's counsel had considered calling an expert witness "some months" prior to the pretrial conference yet delayed notifying the defendant "despite the fact that the cutoff for expert discovery had passed more than a year earlier, and despite the fact that the trial date was rapidly approaching" Plaintiff's delay could be deemed made in bad faith to gain a tactical advantage. Id. at 720-21. Here, the Clauser Report indicates that Clauser inspected the snow blower on April 5, 2011, well in advance of the May 18, 2011 deadline. In Plaintiff's response, he explains that the deposition transcript of Defendant's corporate designee was unavailable until May 6, 2011 and that, after Clauser reviewed the transcript, he requested information from Plaintiff's father concerning whether he purchased the snow blower fully assembled. Apparently, Plaintiff's father was not deposed during the

discovery period. Furthermore, according to Plaintiff, his counsel contacted Plaintiff's father, who then produced an affidavit stating he had purchased the snow blower fully assembled and provided it to Clauser on June 10, 2011. Clauser completed his report on June 15, 2011 and Plaintiff's counsel emailed it to Defendant the following day. Although this conduct evidences questionable practices on the part of Plaintiff's counsel in failing to communicate either with Defense counsel or this Court, we do not find that it rises to the level of bad faith, in part, because Plaintiff has shown a willingness to cooperate with further discovery efforts and in part because, as previously mentioned, no trial date has been set. Accordingly, we will deny Defendant's Motion and we will grant Defendant thirty days to complete its own expert discovery.

      An appropriate Order follows.